**Affirmed and Memorandum Opinion filed July 12, 2022.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-21-00151-CV

---

### DEYSI R. SANTOS, Appellant

### V.

### YELLOWFIN LOAN SERVICING CORP., AS SUCCESSOR IN INTEREST TO FIRST FRANKLIN, Appellee

---

**On Appeal from the 295th District Court
Harris County, Texas
Trial Court Cause No. 2020-35442**

---

## MEMORANDUM OPINION

After appellant Deysi R. Santos defaulted on a promissory note, the note's owner accelerated all payments due under the note and, when Santos still did not pay, sued to recover the balance owed. Appellee Yellowfin Loan Servicing Corp. owned the note and moved for summary judgment on its breach of contract claim against Santos. The trial court granted the motion and awarded Yellowfin its claimed damages.

Santos appeals and raises nine numbered issues, many of which overlap. Boiled down, Santos (1) challenges Yellowfin's ownership of the note, (2) asserts a limitations defense, and (3) contends that Yellowfin failed to meet its summary judgment burden. After considering the parties' arguments and the record before us, we overrule each of Santos's issues and affirm the trial court's judgment.

## Background

On April 28, 2005, Santos executed two loans to purchase a residential property: one for $97,592.00 (the "First Loan") and the second for $24,398.00 (the "Second Loan"). The Second Loan is at issue in today's case and consists of a promissory note (the "Note"), secured by a deed of trust. Santos obtained both loans from First Franklin, a division of National City Bank of Indiana. Under the Note, Santos agreed to pay, in monthly installments, the principal balance as well as all interest and other amounts due at the time of the final payment.

Santos defaulted on her payment obligations. The mortgagee[1] foreclosed on the First Loan in November 2007. The property sold for $104,745.76. The proceeds from the foreclosure satisfied the First Loan and extinguished all junior liens, including the lien underlying the Note.

In 2019, Yellowfin purchased the outstanding Note and became the putative current owner and holder of the Note. Santos contests Yellowfin's ownership, which we discuss below. Yellowfin sent Santos notice of the purchase. Yellowfin then sent a notice of intent to accelerate the payments due under the Note, as a result of Santos's default. Per the notice, Santos had thirty days to cure the default; if she did not, Yellowfin intended to accelerate the Note. Santos did not timely

---

[1] The original mortgagee was First Franklin, and the mortgagee at the time of foreclosure was National City Bank.

2

cure, and Yellowfin accelerated all payments due under the Note. Santos did not remit payment.

Yellowfin sued Santos for breach of the promissory note and alleged that the amount owed under the Note was $21,023.13. This amount did not include any amount owed but not paid prior to June 1, 2019; Yellowfin waived its right to collect those amounts. Santos counterclaimed for fraud and violation of the Texas Debt Collection Practices Act ("TDCPA").[2]

Yellowfin moved for summary judgment on its claim. Santos responded and raised the arguments she again raises on appeal, which we discuss in more detail below. The trial court granted Yellowfin's motion, awarded $21,023.13 in damages, and awarded trial and conditional appellate attorney's fees, costs of court, and post-judgment interest. Santos appeals.

## Issues Presented

Santos presents nine numbered issues for review, which we copy verbatim here. We address overlapping issues together, when appropriate.

1. Did any court have jurisdiction to hear Yellowfin's claim where Yellowfin could not prove it was the owner of the non-negotiable instrument it wanted to enforce?

2. Was there just a single transaction between First Franklin as the lender and Ms. Santos as the borrower when both simultaneous loans between the parties were contractually included in the one loan agreement to finance just one house?

3. Is the two-year limitations period in Tex. Prop. Code § 51.003 for collecting a mortgage deficiency applicable to the Note when there was only one lender who financed the purchase of the property and the foreclosure of the related First Loan by that lender voided the lender's lien for the Note, leaving it with only an unsecured deficiency claim?

---

[2] Santos non-suited her fraud claim, and the trial court disposed of the TDCPA claim in the final judgment.

4. Is the four-year limitations period for debt in Tex. Civ. Prac. & Rem. Code § 16.004 applicable to the Note when the lender's cause of action contractually accrued no later than the date of foreclosure of the linked First Loan in 2007?

5. Was the summary judgment below void because it failed to meet the standards in Tex. R. Civ. P. 166a and failed to follow relevant precedent?

6. Where there are no servicing records for a 2005 loan, does a 2019 guess by the alleged fourth owner of the loan since a 2007 foreclosure, meet the summary judgment standard in Tex. R. Civ. P. 166a to establish the amount that might be owed by the original borrower?

7. Was the Note still an obligation "secured by a real property lien" when it was acquired by a buyer of defaulted debt more than twelve years after the lien against the property was voided by foreclosure of the First Loan?

8. Does public policy require the owner of a defaulted loan to sue before twelve years after its claim contractually accrued?

9. Is the right to sue on a debt waived if no action is taken on it for more than twelve years after the right contractually accrued?

**Analysis**

**A.    Ownership of the Note**

In her first issue, Santos argues that the Note was a non-negotiable instrument and that Yellowfin had no standing to enforce it.

In Texas, negotiable instruments are governed by the Uniform Commercial Code ("UCC"), as adopted by the Texas Legislature and codified in the Texas Business and Commerce Code. *See Amberboy v. Societe de Banque Privee*, 831 S.W.2d 793, 793 (Tex. 1992); Tex. Bus. & Com. Code tit. 1, §§ 1.101-12.004 ("Uniform Commercial Code"). "Negotiable instrument" means an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, so long as the promise or order does not state any other undertaking or instruction by the person promising or ordering payment to do any action in addition to the payment of money. Tex. Bus. & Com.

4

Code § 3.104(a). A promise or order is unconditional unless it states an express condition to payment, that the promise or order is subject to or governed by another record, or that rights or obligation with respect to the promise or order are stated in another record. *Id.* § 3.106(a).

Santos does not dispute that the Note is a promise to pay. However, Santos argues that the Note violates section 3.106 because the promise is governed by another record or because the rights or obligation with respect to the promise to pay are stated in another record. Specifically, Santos points to sections 11 and 15 of the Note, and those sections' references to other documents. Section 11, governing default and remedies, provides that Santos will be in default if she fails to keep any of her agreements "under this Note *or under any other agreement with [the lender]*." (Emphasis added.) Section 15, governing signatures, states: "You have read and agree to all provisions of this Note including those on pages 1 through 3 *and in the Disclosure Statement which are incorporated herein by reference. . . .* See pages 1, 2 and 3 and the Disclosure Statement for additional important terms and conditions." (Emphasis added.) The Note defines "Disclosure Statement" as "the separate federal truth-in-lending disclosure statement of even date provided to you, the terms of which are incorporated by reference in this Note." Disclosures in the Disclosure Statement "are contract terms," according to the Note.

We agree with Santos that the Note is rendered non-negotiable by its statement that the terms of the Disclosure Statement are incorporated by reference. A mere "reference to another record does not of itself make the promise or order conditional." *Id.* § 3.106(a). But when a note specifically incorporates by reference the terms of other documents, the promise is no longer conditional

because one must examine those other documents to determine if they place conditions on payment.

For instance, in *FFP Marketing Co. v. Long Lane Master Trust IV*, 169 S.W.3d 402, 409 (Tex. App.—Fort Worth 2005, no pet.), a note stated that "[a]ll of the terms of the Loan Agreement and the Indenture are incorporated into this Note by reference, with the same effect as if they were reprinted here in full." Because the note was governed by the terms of another writing, requiring one to look outside the note to determine if payment was conditional or if the terms of that document altered the rights with respect to payment, the court concluded that the note was not a negotiable instrument. *Id.* This court has held similarly. *See Guniganti v. Kalvakuntla*, 346 S.W.3d 242, 249 (Tex. App.—Houston [14th Dist.] 2011, no pet.) (language in note stating that "[a]dditional advances will be made in accordance with the terms and conditions of the Loan Agreement, reference to same being here made for all purposes" burdened the note with the conditions of the other document and rendered the note non-negotiable); *Mitchell v. Riverside Nat'l Bank*, 613 S.W.2d 802, 803 (Tex. App.—Houston [14th Dist.] 1981, writ ref'd n.r.e.) (language in note that it "is subject to and governed by said contract, which is hereby expressly referred to, incorporated herein and made a part hereof" destroyed the negotiability of the instrument and rendered the instrument burdened by the terms within the extrinsic contract). These holdings state the law in Texas. *See Cont'l Nat'l Bank of Fort Worth v. Conner*, 214 S.W.2d 928, 931 (Tex. 1948) (indicating that an otherwise negotiable instrument can be rendered non-negotiable if it is burdened with the conditions of another agreement); *Great N. Energy, Inc. v. Circle Ridge Prod., Inc.*, 528 S.W.3d 644, 661 (Tex. App.—Texarkana 2017, pet. denied) (language that "Deed of Trust, Security Agreement and Financing

Statement are incorporated herein by this reference for all purposes as if fully set forth at length herein" rendered note non-negotiable).

It does not matter whether the terms of the Disclosure Statement actually placed conditions on Santos's payment. As the commentary to section 3.106 explains, "It is not relevant whether any condition to payment is or is not stated in the writing to which reference is made. The rationale is that the holder of a negotiable instrument should not be required to examine another document to determine rights with respect to payment." Tex. Bus. & Com. Code § 3.106 cmt. 1.

Because the Note expressly incorporates the terms of the Disclosure Statement, the Note is burdened by those terms and rendered non-negotiable. Accordingly, the Business and Commerce Code does not govern enforcement of the Note; contract law does. See FFP Mktg., 169 S.W.3d at 409.

A party not identified in a note who is seeking to enforce it as the owner or holder must prove the transfer by which it acquired the note. See Leavings v. Mills, 175 S.W.3d 301, 309 (Tex. App.—Houston [1st Dist.] 2004, no pet.). Under Texas law, the transfer of a note may be proved by testimony or documentation. See id. at 312. An unexplained gap in the chain of title creates a genuine issue of material fact. See id. at 309.

Yellowfin's records custodian, Matt Miller, testified by affidavit that Yellowfin acquired the Note in August 2019 as part of a pool of mortgages sold by RCS Recovery Services, LLC, and that Yellowfin lawfully held the Note. Miller also attached a copy of the Note, to which a series of putative indorsements and allonges were affixed.[3] The first two indorsements show that First Franklin

---

[3] An indorsement is the placing of a signature, sometimes with an additional notation, on the back of a negotiable instrument to transfer or guarantee the instrument or to acknowledge

7

indorsed the Note to First Franklin Financial Corporation, which then indorsed it to Dreambuilder Investments, LLC. Dreambuilder then executed an allonge to RCS Recovery Services, LLC, which then sold the Note and also executed an allonge to Yellowfin. Even though the Note is not governed by the Business and Commerce Code, the indorsements and allonges on the Note, as well as the purchase and sale agreement between RCS and Yellowfin, "constitute more than a scintilla of evidence of the assignments of title, and therefore ownership," from the original owner, First Franklin, to the ultimate owner, Yellowfin. *Diversified Fin. Sys., Inc. v. Hill, Heard, O'Neal, Gilstrap & Goetz, P.C.*, 99 S.W.3d 349, 357 (Tex. App.—Fort Worth 2003, no pet.) (even though indorsements on note did not create a presumption of ownership upon transfer, as they would have under the UCC, they nonetheless constituted probative evidence of assignment of ownership). Thus, Yellowfin met its initial summary judgment burden to establish that it owned the Note. Santos did not offer any controverting evidence that would raise a fact issue on Yellowfin's ownership.

Although we agree with Santos that the Note is a non-negotiable instrument, because Yellowfin otherwise established ownership, we nonetheless overrule her first issue challenging Yellowfin's ownership of, and standing to enforce, the Note.

## B. Statute of Limitations

In her second, third, fourth, and seventh issues, Santos argues that Yellowfin's claim was time-barred.

According to Santos, the Note was part of a single loan agreement, which included the First Loan; the lender's foreclosure on the First Loan in 2007

---

payment. *See* "Indorsement," Black's Law Dictionary (11th ed. 2019). An allonge is "[a] slip of paper sometimes attached to a negotiable instrument for the purpose of receiving further indorsements when the original paper is filled with indorsements." "Allonge," Black's Law Dictionary (11th ed. 2019).

extinguished all junior liens; and any right to enforce the Note accrued at that point. Thus, Santos contends, the statute of limitations expired two years after foreclosure, in 2009 or 2011. Because Yellowfin did not file suit until 2020, Santos argues that the suit is time-barred.

Santos and Yellowfin disagree on when Yellowfin's claim accrued and which statute of limitations applies to Yellowfin's claim. Yellowfin posits that its claim did not accrue until it accelerated the note, and the six-year limitations period found in the UCC applies. *See* Tex. Bus. & Com. Code § 3.118 (providing statute of limitations to sue on negotiable instruments is six years). Santos believes that Yellowfin's claim accrued at the point of foreclosure, and the two-year limitations period for deficiency claims applies. *See* Tex. Prop. Code § 51.003(a) (if sale price from foreclosure is less than unpaid balance of indebtedness, action to recover deficiency must be brought within two years of foreclosure sale).

If the limitations period for deficiency claims applies, then Yellowfin's suit is time-barred. Whenever a borrower is sued after real property is sold at a foreclosure sale, and judgment is sought against the borrower because the foreclosure sales price is less than the amount owed, "then (1) the suit is for a 'deficiency judgment,' (2) the suit must be brought within two years of the foreclosure sale, and (3) the suit is governed by § 51.003." *PlainsCapital Bank v. Martin*, 459 S.W.3d 550, 555 (Tex. 2015). But when a senior lienholder forecloses on its lien, and the proceeds of that sale do not satisfy the debt from a junior lien, section 51.003 does not apply to the junior lienholder's suit to recover the value of its note. This is because the junior lienholder has not foreclosed on its lien; only the senior lienholder has.

Two cases are illustrative. In *Mays v. Bank One, N.A.*, 150 S.W.3d 897, 898 (Tex. App.—Dallas 2004, no pet.), the appellant executed two different promissory

9

notes to different lenders. When the appellant defaulted, the senior lienholder foreclosed but was only able to satisfy the first debt. *Id.* No proceeds were left for the junior lienholder, so that holder sued for the value of its promissory note. *Id.* The appellant aimed to use the property's fair market value to offset the claimed deficiency under Texas Property Code section 51.005, which only applies after a foreclosure sale results in a deficiency. *See id.* at 899; Tex. Prop. Code § 51.005. However, the court found the statute inapplicable, noting that "the only foreclosure was of the lien held by" the senior lienholder. *Mays*, 150 S.W.3d at 900. Because the second lien remained wholly unsatisfied and the second lien was extinguished by the foreclosure, the court held that the statute did not apply. *Id.*

The First Court of Appeals held similarly in *Mandarino v. Sherwood Lane Investments, LLC*, No. 01-15-00192-CV, 2016 WL 4034568 (Tex. App.—Houston [1st Dist.] July 26, 2016, no pet.) (mem. op.). There, appellants purchased a third party's ownership interest in an apartment complex and signed a promissory note with the third party as payee. *Id.* at *1. The third party still owed a portion of the principal from its original purchase of the apartment complex (the "First Lien Principal"), which it incorporated into the new promissory note. *Id.* The original note on the First Lien Principal was designated the "wrapped note" and the note signed by appellants was named the "wraparound note." *Id.* The senior lienholder, who had possession of the wrapped note, foreclosed on its lien after appellants defaulted on their obligations to both notes. *Id.* at *8. However, the proceeds of that sale did not satisfy any of the debt from the junior lien, which was the wraparound note. *Id.* The junior lienholder sued to recover the unpaid balance of its note, and appellants argued that section 51.003 applied to time-bar the suit. *Id.* at *2, 7. But the court of appeals held that the section did not apply: "Just as there was no foreclosure by the junior lienholder in *Mays*, so was there no foreclosure by

10

Sherwood Lane in the instant case." *Id.* at *8. Because the court concluded that the junior lienholder was not seeking a deficiency judgment when it sued on its promissory note, it was not subject to the statute of limitations for deficiency judgments. *Id.*

Yellowfin is not seeking a deficiency judgment from the 2007 foreclosure sale. Yellowfin (or its predecessor-in-interest) did not foreclose on the Note. Rather, a separate lender foreclosed on the First Loan, and the proceeds from that sale did not satisfy the debt owing under the Note. Thus, section 51.003 does not apply to Yellowfin's suit. *See id.*; *Mays*, 150 S.W.3d at 900.

Rather, Yellowfin's suit is subject to a four-year limitations period. The statute of limitations on a suit for debt is four years after the cause of action accrues. *See* Tex. Civ. Prac. & Rem. Code § 16.004(a)(3). The statute of limitations on foreclosure of a real estate lien similarly is four years from the date of accrual of the cause of action, but "the four-year limitations period does not begin to run until the maturity date of the last note, obligation, or installment." *Id.* § 16.035(a), (e). The question becomes whether Yellowfin's claim accrued more than four years before it filed suit.

If a promissory note contains an optional acceleration clause, limitations does not automatically start to run upon default; an action accrues "only when the holder actually exercises its option to accelerate" the entire note. *See Holy Cross Church of God in Christ v. Wolf*, 44 S.W.3d 562, 566 (Tex. 2001).

It is undisputed that the Note contains an optional acceleration clause[4] and that Yellowfin accelerated the Note on March 25, 2020, which was three months

---

[4] The Note provides:

You will be in default under this Note if . . . you fail to make any payment or pay other amounts owing under this Note when due[.] . . . If you are in default, in

11

before filing suit. Santos did not present any controverting evidence, such as evidence that some other party accelerated the Note at an earlier date. Accordingly, Santos did not raise a fact issue regarding her defense that Yellowfin's claim accrued outside the applicable limitations period.[5] *See, e.g.*, *Ocean Transp., Inc. v. Greycas, Inc.*, 878 S.W.2d 256, 267 (Tex. App.—Corpus Christi 1994, writ denied) (when note provided that lender, at its option, could declare note immediately due and payable upon default of any installment, date of acceleration triggered limitations period).

We overrule Santos's second, third, fourth, and seventh issues.

## C. Propriety of Summary Judgment

In her fifth and sixth issues, Santos argues that Yellowfin failed to meet its summary judgment burden under rule 166a.

Santos first argues that the trial court failed to make reasonable inferences and resolve any doubts in Santos's favor, which we construe to mean that the trial court failed to correctly apply the summary judgment standard. For instance, Santos asserts that "[l]imitations on the Note began to run when First Franklin, the original lender, acquired the right to declare all amounts due and payable" and that "[t]he default on the First Loan caused the accrual of the cause of action to enforce both the First Loan and the Note." Santos continues, "[i]f the trial court had just

___

addition to any other rights and remedies we have under law and subject to any right you may have to cure your default, we may do any of the following: (aa) accelerate the entire balance owing under this Note after any demand or notice which is required by law, which entire balance will be immediately due and payable . . . .

[5] When a plaintiff moves for summary judgment on its cause of action, the defendant may respond by raising the affirmative defense of limitations, as Santos did here. In that circumstance, the defendant is not required to prove its defense as a matter of law to defeat the plaintiff's summary judgment; it is simply required to raise a fact issue about its defense. *See Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984) (affirmative defense of modification).

upheld even a few of the points, as it was required to, then the issue of the special two year limitations period for a suing on a deficiency . . . and the four years for debt . . . would have immediately precluded summary judgment in favor of a plaintiff who filed suit in 2020, more than twelve years after the cause of action contractually accrued in 2007." But these are legal arguments, not facts from which inferences may be made or doubts to be resolved. Further, they are premised on Santos's contention that Yellowfin's claim accrued upon Santos's foreclosure in 2007. As already explained, limitations does not bar Yellowfin's suit. The trial court did not err as Santos contends.

Santos also argues that Yellowfin did not offer competent summary judgment proof of the amount of damages claimed. According to Santos, the amount sought by Yellowfin was "a naked guess by someone with no knowledge."

Yellowfin's records custodian, Martin, testified:

> According to Plaintiff's records, Defendant owes a balance of $21,023.13. Plaintiff is not accruing pre-judgment interest. The balance owed was calculated by conducting an amortization of the original principal amount of the Note in accordance with the terms prescribed by the Note (ie: an amortization of $24,398.00 over twenty years with interest accruing at a rate of 11.25 %, and a final balloon payment of $17,263.03) then assuming that each and every payment was timely made through May 1, 2019. To the extent any payment was not made prior to June 1, 2019, Yellowfin waives its right to collect that payment and is not seeking to recover any portion of that payment through this lawsuit.

This uncontroverted evidence is sufficient to establish the amount owed. *See FFP Mktg.*, 169 S.W.3d at 411 ("Generally, an affidavit that sets forth the total balance due on a note is sufficient to sustain an award of summary judgment. Detailed proof of the balance is not required."); *Das v. Deutsche Bank Nat'l Tr. Co.*, No. 05-12-01612-CV, 2014 WL 1022385, at *2 (Tex. App.—Dallas Mar. 5,

2014, pet. denied) (mem. op.) (accepting affidavit testimony from an employee of the "loan . . . servicing agent" as valid evidence of the balance due and owing on the note, given the employee's testimony that he had verified and researched the loan's history and current account information on behalf of the holder, Deutsche Bank); *Albright v. Regions Bank*, No. 13-08-262-CV, 2009 WL 3489853, at *4 (Tex. App.—Corpus Christi Oct. 29, 2009, no pet.) (mem. op.) ("An affidavit made on personal knowledge of the bank officer, which identifies the notes and guaranty and recites the principal and interest due . . . is sufficient to support a summary judgment motion."); *Greene v. Deutsche Bank Nat'l Tr. Co.*, No. 01-04-00483-CV, 2005 WL 1244604, at *1, 3 (Tex. App.—Houston [1st Dist.] May 26, 2005, pet. denied) (mem. op.) (accepting the affidavit of a manager for the "loan servicing agent" as a person sufficiently situated to testify on the balance owed, based on synthesis of eleven records related to the loan's account history). Santos did not present any evidence that she owed a different amount of money or that she was entitled to any credits or offsets (beyond the default amounts excused through June 2019). *E.g.*, *Sandhu v. Pinglia Invs. of Tex., L.L.C.*, No. 14-08-00184-CV, 2009 WL 1795032, at *5 (Tex. App.—Houston [14th Dist.] June 25, 2009, pet. denied) (mem. op.) ("Moreover, Sandhu has not presented any controverting evidence raising a fact issue as to Pinglia Investments's method of computation and the accuracy of its figures.").

We conclude that Yellowfin carried its summary judgment burden to show its entitlement to the damages awarded. We overrule Santos's fifth and sixth issues.

## D. Remaining Issues

In her eighth and ninth issues, Santos asks whether public policy requires the owner of a defaulted loan to sue before twelve years after its claim contractually

accrued and whether the right to sue on a debt is waived if no action is taken on it for more than twelve years after the right contractually accrued. These issues are premised on Santos's mistaken contention that Yellowfin's claim to enforce the Note accrued upon Santos's foreclosure in 2007. We have already explained why Santos's position is unmeritorious. We overrule Santos's eighth and ninth issues.

## Conclusion

We affirm the trial court's judgment.


/s/    Kevin Jewell
               Justice


Panel consists of Justices Jewell, Zimmerer, and Hassan.